UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN RICHARDSON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-159

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

       This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On November 21, 2005, plaintiff filed his applications for DIB and SSI benefits, alleging an August 1, 2005 onset of disability.[1] His claims were denied on initial review. (A.R. 21-22, 51-55, 69-73). On May 5, 2008, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 265-97). On September 3, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-20). On January 9, 2009, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, December 2005 is plaintiff's earliest possible entitlement to SSI benefits.

On February 24, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on three grounds:

1. The Commissioner improperly disregarded the opinion of plaintiff's treating physician and gave more weight to the opinion of a consultative examiner who saw plaintiff on one occasion, for less than 10 minutes;

2. The Commissioner improperly discounted plaintiff's credibility despite testimony from treating sources that plaintiff's pain and functional limitations related thereto were consistent with the underlying objective evidence; and

3. The hypothetical question the ALJ posed to the vocational expert did not accurately reflect all plaintiff's functional limitations.

(Statement of Errors, Plf. Brief at 3, docket # 9). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters*

*v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of August 1, 2005, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (A.R. 15). The ALJ found that plaintiff had the following severe impairments: "status post lumbar

laminectomy in February 2006; history of left knee surgery; degenerative disc disease; hypertension; and diabetes mellitus." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 15-16). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[,] except no lifting, carrying, pushing, [or] pulling more than 10 pounds; occasional postural limitations[,] but never climb ladders, ropes, scaffolds; and avoid concentrated exposure to vibration and hazards.

(A.R. 16). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:

> The claimant's assertion of debilitating and intractable pain is not credible. He alleges that his pain is of such severity that he is unable to sit for any length of time and that he must recline during the day. The diagnostic tests do not support this. He is not taking narcotic pain medication. He has not complained of side effects from his medication. There were no further recommendations from his treating surgeon[,] but only from the independent medical examiner. While he may have spent more time with the claimant during the interview and evaluation, his restrictions are nonetheless by claimant report.
>
> In reviewing the claimant's activities of daily living, his statements in the file demonstrate that he fixes meals, takes children to the bus stop, mows the lawn, gardens, takes out the garbage, drives, shops, pays bills, plays catch with children, watches television, and handles finances. He goes camping, fishing, and hunting (Exhibit[s 1E, 12E])[A.R. 74-81, 120-24].
>
> In summary, the claimant is status post surgery with very conservative treatment. The diagnostic findings and statements in the file indicated he is capable of performing the established residual functional capacity.

(A.R. 18). The ALJ found that plaintiff was unable to perform his past relevant work. (A.R. 18). Plaintiff was 45 years old as of his alleged onset of disability and 47 years old as of the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 19). Plaintiff has a general equivalency diploma (GED) and is able to communicate in English. (A.R. 19). The transferability of jobs skills was not material

to a disability determination. (A.R. 18). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 4,400 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 290-91). The ALJ found that this constituted a significant number of jobs. Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 13-20).

**1.**

Plaintiff argues that the ALJ improperly "disregarded" the opinions of Padmini Bhadriraju, M.D., a treating physician, and that he gave too much weight to the opinions of Donald Sheill, M.D., a consultative examiner. (Plf. Brief at 11-15). I find no error.

Jurgen Luders, M.D., was plaintiff's treating surgeon. On February 28, 2006, Dr. Luders performed a "L4-5 lumbar laminectomy with left L4-5 and left L5-S1 foraminotomies, partial facetectomies, and left L4-5 and left L5-S1 discectomy." (A.R. 158). The ALJ observed that,

> In July 2007, the claimant's surgeon ordered a lumbar myelogram to evaluate complaints of pain with radiating pain to the lower extremities. The study showed small ventral extradural defects from disc bulges[,] but no other significant abnormalities. The computed tomography of the claimant's lumbar spine was negative for intervertebral disc herniation or disc bulging. The lumbar spine x-rays revealed a grade one[-]half retrospondylolisthesis at L5-S1[,] without change between flexion and extension views. Lesser retrospondylolisthesis was noted at L4-5[,] with slightly more prominence during extension and flexion[,] but there were no signs of instability at the other lumbar levels. (Exhibit 8F/3/2/1)[A.R. 173-75]. The only other diagnostic test was the February 2008 electromyelography of the lower extremities that was abnormal[,] indicating chronic axonopathy bilaterally, most likely due to scar tissue formation (Exhibit 9F/4)[A.R. 179].

(A.R. 17).

Plaintiff did not support his disability claims with Dr. Bhadriraju's treatment records. Instead, his attorney submitted a sworn statement he obtained from Dr. Bhadriraju a week before plaintiff's hearing. (A.R. 198-208). Dr. Bhadriraju reported that his records showed that he first treated plaintiff on February 21, 2007. (A.R. 201). He stated that if plaintiff testified that he needed to lie down periodically during the day for pain relief, his testimony would be "consistent" with his impairments. (A.R. 203). Further, when Attorney Neal asked the doctor to comment on the claimant's "v[e]racity or credibility in terms of how he presents himself on clinical evaluation," he responded that plaintiff was "consistent." (A.R. 204). He later opined that it would be "difficult" for plaintiff to engage in full-time employment. (A.R. 204). The ALJ carefully explained why he gave little weight to Dr. Bhadriraju's opinions and why he found that Dr. Sheill's assessment was well-supported and persuasive:

> On April 28, 2008, Dr. Bhadriraju, the claimant's primary physician, stated that he has been trying to get the claimant's high blood sugars and high blood pressure under control. He admitted that the claimant has not been referred for pain management but that he was referred to a neurologist. Dr. Bhadriraju said that he had been treating plaintiff since early 2007 and that the claimant ha[d] a good record of compliance with medication because his blood sugar follow up appointment indicated good control. However, in his opinion it would be difficult for the claimant to engage in full-time, sustained employment because he has difficulty with increased pain from prolonged standing, walking, and sitting and he lies down periodically during the day for relief of symptoms (Exhibit 12F)[A.R. 198-208]. This opinion is given little weight because Dr. Bhadriraju admitted that he is essentially treating the claimant for his "problems" and that a neurologist would be evaluating him. Furthermore, Dr. Bhadriraju's opinions are rather vague regarding the claimant's limitations.
>
> After the hearing, the undersigned requested that the claimant be evaluated by Dr. Sheill.[2] Dr. Sheill indicated that the claimant could perform a wide range of sedentary activities, including having full use of his hands. Jaymar testing was 101 pounds on the right and 105 pounds on the left. Dexterity was intact. Although the claimant used a cane, it did not

---

[2]The ALJ gave plaintiff's attorney an opportunity to respond to Dr. Sheill's assessment. The only "evidence" that Dr. Sheill's examination was limited to ten minutes is plaintiff's unsworn statement to his lawyer to that effect.

> appear vital for ambulation[,] but that it could be helpful for uneven surfaces. The claimant could perform the neurologic and orthopedic tests. He could perform typical postural activities occasionally with the exception of climbing ladders and scaffolds, which he should avoid. (Exhibit 15F)[A.R. 227-32]. While Dr. Sheill's observations and opinions are also restrictive, it does not limit the claimant's activities as the residual functional capacity assessment by the State Agency medical consultant in April 2006. The undersigned is aware that Exhibit 7F [A.R. 165-72] is the opinion of an enhanced examiner, nevertheless, it is supported and a reasonable assessment given the minimal treatment and diagnostic findings. This assessment demonstrates a significant range of sedentary work, but no lifting, carrying, pushing or pulling more than 10 pounds; occasional postural limitations[,] but never climb ladders, ropes and scaffolds; and avoid concentrated exposure to vibration and hazards. Many of the limitations are similar to those of examining physicians, but the claimant is able to perform the tasks on a consistent and competitive basis.

(A.R. 17-18).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Bhadriraju's opinion regarding the credibility of plaintiff's subjective complaints and his opinion that plaintiff would find it "difficult" to work on a full-time basis were not entitled to any special significance.[3] *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see also Halsell v. Astrue*, No. 09-2129, 2009 WL 4913322, at *5 (7th Cir. Dec. 18, 2009). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is

---

[3]There is more than substantial evidence supporting the ALJ's finding that plaintiff retained the RFC for a limited range of sedentary work. RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Collins v. Commissioner*, No. 08-6473, 2009 WL 4906907, at * 4 (6th Cir. Dec. 18, 2009).

"inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). The credibility of the plaintiff's subjective complaints is an issue reserved to the Commissioner, and a treating physician's opinion regarding the credibility of his patient's subjective complaints is not entitled to any particular weight. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009). Dr. Bhadriraju's opinions were not entitled to controlling weight because there is no record evidence establishing that they were based on sound medical testing, evaluation and diagnosis. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). I am unaware of any case in which a federal court has held that a treating physician's opinion was entitled to controlling weight where his underlying treatment records were not submitted in support of the plaintiff's claim for social security benefits.

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006). Here, the opinion of Dr. Bhadriraju was virtually a naked opinion, as plaintiff did not submit any of the underlying treatment records. Plaintiff failed to submit any evidence showing length of treatment, treatment dates, tests conducted, or therapies employed by Dr. Bhadriraju. On this record, the ALJ was justified in giving this opinion little weight.

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

I find no violation of the treating physician rule. The ALJ's opinion is supported by more than substantial evidence, and the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Bhadriraju's opinions.

**2.**

Plaintiff argues that the ALJ improperly discounted his credibility, despite testimony from treating sources that his pain and functional limitations related thereto were consistent with the

underlying objective evidence. He argues that the ALJ "ignored" the opinions of Drs. Bhadriraju, Madden, and Montes. (Plf. Brief at 13-15). The ALJ did not ignore Dr. Bhadriraju's opinions, and his reasons for rejecting those opinions were addressed at length in the preceding section of this report and recommendation. Similarly, the opinions of Drs. Madden and Montes on issues reserved to the Commissioner were not entitled to any particular weight. Upon review, I find that the ALJ correctly applied the law, and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### A. Dr. Montes

On April 22, 2008, Stephen A. Montes, D.O., examined plaintiff on a referral from plaintiff's attorney. (A.R. 184-95). He offered the following diagnosis: moderate to severe lumbar myositis on the left greater than the right, status post lumbar laminectomy and foraminotomy L5-S1, failed back syndrome, chronic L5-S1 nerve root radiculopathy on the left greater than the right, moderate clinical depression, and chronic pain syndrome. (A.R. 184). Dr. Montes provided an extremely restrictive assessment of plaintiff's RFC, stating, among other things, that plaintiff could work for only 1 hour in an 8-hour workday with a sit/stand option. (A.R. 193). He also expressed an opinion that, "Mr. Richardson is incapable of any gainful employment, not even sedentary type of employment on an 8 hour day, 5 days a week, 50 weeks a year basis." (A.R. 191). The ALJ did not ignore Dr. Montes's opinions. He found they were entitled to little or no weight, because the proffered restrictions were extreme and not supported by the record:

> Dr. Montes indicated the claimant's subjective complaints were consistent with the objective findings during the April 2008 examination. In his opinion, the claimant has moderate to severe lumbar myositis, status post lumbar laminectomy and foraminotomy L5-S1, failed back syndrome, chronic L5-S1 nerve root radiculopathy, moderate clinical depression, and

chronic pain syndrome. Dr. Montes indicated that the claimant should not lift more than five pounds and no bending, squatting, kneeling[,] crawling, stair or ladder climbing, using vibratory tools, perform[ing] repetitive activities or overhead use of upper extremities, but walking to tolerance. He should not work full-time in sedentary type jobs. The claimant should have additional surgery (Exhibit 11F)[A.R. 191-95]. The undersigned gives little weight to Dr. Montes'[s] rather extreme limitations. Indeed, his opinion is not shared by the claimant's treating surgeon, Dr. Luders. It was Dr. Luders who ordered the 2007 diagnostic tests and there is no evidence that he recommended further surgical intervention. Furthermore, in the event that Dr. Montes'[s] diagnosis of clinical depression is a new onset and untreated, the diagnosis is given no weight. There is no evidence that the claimant's depression has been "severe" or nonsevere [long enough] to meet the duration requirement (20 CFR §[§] 404.1509 and 416.909).

(A.R. 17).

B. <u>Dr. Madden</u>

Plaintiff's argument that the ALJ ignored Dr. Madden's records cannot withstand scrutiny. (A.R. 17). Dr. Madden's records were submitted after the hearing. (A.R. 209-22). They reveal that Dr. Madden conducted her initial evaluation on November 27, 2007, on a referral from Dr. Bhadriraju. (A.R. 221). The purpose of the referral was to obtain Dr. Madden's "recommendations concerning pain medications." (A.R. 221). Upon examination, Dr. Madden found that plaintiff was in no acute distress. He was alert and oriented to person, place, and time. His range of motion in his cervical and lumbar spine was within normal limits. Plaintiff's strength in his upper and lower extremities was 5/5 bilaterally. Dr. Madden observed that the MRI of plaintiff's lumbar spine revealed "postoperative changes at L4-L5 and degenerative changes overall at L4-L5 and L5-S1," but she found "no obvious foraminal or central stenosis or disc herniations." (A.R. 222). She offered the following diagnosis: lumbago, mechanical low back pain, degenerative changes of the lumbar spine, and obesity and deconditioned state. Dr. Madden recommended that plaintiff exercise to strengthen his lumbar and abdominal muscles. (A.R. 222). Dr. Madden

recorded similar results in her subsequent examinations on December 17, 2007, and January 14, February 11, 25, and April 8, 2008. (A.R. 212, 214, 216-20). The ALJ's observation that Dr. Madden had treated plaintiff "conservatively with medication and one nerve block" (A.R. 17) was accurate.

      C.     <u>The ALJ's Factual Finding Regarding Plaintiff's Credibility</u>

This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded

deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234. The ALJ provided a detailed and lengthy discussion of his reasons for finding that plaintiff's subjective complaints were not fully credible. (A.R. 16-18).

Plaintiff argues, "The ALJ's discounting of the plaintiff's symptoms because he does not use narcotics is simply wrong." (Plf. Brief at 14)(citing A.R. 17). The ALJ was correct when he observed that Dr. Madden did not treat plaintiff with narcotic medications. (A.R. 17). Dr. Madden stated that "using Norco or [other] narcotic medications on a regular basis [was] not the most appropriate treatment because [it was] only going to make [plaintiff] dependent on the medication." (A.R. 222). Plaintiff asserts that Dr. Bhadriraju had prescribed Norco. It is difficult to fault the ALJ for failing to recognize that there was evidence from which he could have inferred that Dr. Bhadriraju continued to provide plaintiff with Norco (*see e.g.*, A.R. 211, 222), when plaintiff's pre-hearing statement omitted Norco from his medication list. (A.R. 127). The statement Attorney Neal obtained from Dr. Bhadriraju (A.R. 198-206) is devoid of any reference to Norco. Dr. Bhadriraju's treatment records were not submitted in support of plaintiff's disability claims. Assuming *arguendo* that Dr. Bhadriraju continued to supply plaintiff with a prescription for Norco, his basis for doing so is incomprehensible on this administrative record. Dr. Madden stated that it was not appropriate treatment, and plaintiff stated that he did not believe this medication was helpful. (A.R. 211).

Plaintiff's burden in attacking the ALJ's credibility determination is much higher than simply pointing out a perceived inaccuracy in the ALJ's opinion. *See e.g.*, *Halsell*, 2009 WL 4913322, at * ("Not all the ALJ's reasons [for his credibility determination] must be valid as long as *enough* of them are."). The plaintiff must engage all aspects of the ALJ's credibility

determination and the evidence supporting it. Here, the administrative record supports the ALJ's findings that the objective evidence did not support plaintiff's subjective complaints, that plaintiff did not complain of any significant side-effects from his medications, and that plaintiff's treating surgeon had not recommended further surgical intervention. (A.R. 18). It was appropriate for the ALJ to consider plaintiff's extensive daily activities when he made his findings regarding plaintiff's credibility. *See Cruse v. Commissioner*, 502 F.3d at 542-43; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Price v. Commissioner*, 342 F. App'x 172, 180 (6th Cir. 2008). I find that the ALJ's credibility determination is supported by more than substantial evidence.

**3.**

Plaintiff argues that the hypothetical question the ALJ posed to the VE was inadequate because it did not include plaintiff's asserted need to lie down for 1-to-2 hours in the morning and again in the afternoon for pain relief. (Plf. Brief at 15-17) (citing A.R. 282). A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d

1230, 1235 (6th Cir. 1993); *see also Chandler v. Commissioner*, 124 F. App'x 355, 358-59 (6th Cir. 2005).  Plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: February 3, 2010           /s/ Joseph G. Scoville
                                  United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).